WILLIAM J. SMITH AND LARKIN J. EDWARDS, LATELY CO-PARTNERS UNDER THE FIRM NAME OF W. J. SMITH & COMPANY, *Appellants*, v. JORDAN W. HOPE AND GRACE M. HOPE, HIS WIFE, *Appellees*.

1. Where parties intend a conditional sale rather than a mortgage the intention will be given effect.

2. An instrument in form a conditional bill of sale, and alleged in a bill seeking to enforce it to be a conditional bill of sale, will not, upon demurrer to the bill, be held a mortgage. If the circumstances under which it was given are such that it will be held in law a mortgage, but these do not appear from the bill, they must be set up by plea or answer.

3. A feature essential to a mortgage is an indebtedness which it is designed to secure. The existence of this is not implied in a provision that a bill of sale shall be void if the grantors shall "pay" a certain sum of money by a certain day. Payment of money does not necessarily imply a previous binding obligation to pay, but may be made as the recompense or equivalent for some present benefit, the procurement of which is optional with the payer.

This case was decided by Division B.

Appeal from Circuit Court for Hernando county.

## Statement.

The appellants filed a bill in the court below for the enforcement of the following instrument, *i. e.*:

"State of Florida, Hernando county.

Know all men by these presents, that we, J. W. Hope and wife, Grace M. Hope, for and in consideration of the sum of two hundred dollars ($200.00) received in hand this day, the receipt of which we hereby acknowledge, have bargained, sold and transferred, and by these presents do bargain, sell and transfer to W. J. Smith & Co. of Fitzgerald, State and county aforesaid, the following fifty (50) head good, likely stock cattle marked as follows: split and upper bit in each ear (here follows diagram) brand JH.

The condition of this sale is that if the said J. W. Hope or Grace M. Hope, his wife, shall pay or cause to be paid to the said W. J. Smith & Co. or order the said sum of two hundred dollars ($200.00) on or before November 1st, A. D. 1900, this sale and transfer to be null and void, otherwise to be and remain good and effectual in law, in which event we agree to deliver to said W. J. Smith & Co. at Fitzgerald, without charge, the fifty head cattle herein described.

Witness our hands and seal this 23rd day of July, A. D. 1900.

Witness: Thos. D. Duren,  }     J. W. Hope,      (Seal.)
              D. H. Sprecher.  }     G. M. Hope,      (Seal.)"

The bill alleged the instrument to be a deed of bargain and sale, with provision that it should be null and void if the defendants should pay to complainants the sum of two hundred dollars on or before November 1st, 1900, and with special covenant or agreement for delivery of the cattle without charge in default of such payment. The prayer of the bill was for delivery of the cattle.

The defendants demurred to the bill, the fourth ground of demurrer being that "complainants can not obtain the relief sought for the reason that the contract sued on is in

effect and in law a mortgage." This ground of the demurrer was sustained, and from this ruling the complainants appealed.

*J. C. Davant* for appellants.

· *Geo. C. Martin* for appellees.

MAXWELL, J. (*after stating the facts*).—The question presented by this appeal is whether the instrument in question, viewed in the light of the allegations of the bill, is a conditional sale or a mortgage. Upon its face it purports to be a conditional sale; the allegations of the bill are that it is a sale, and it is sought in the bill to enforce it as such. An essential feature to a mortgage is the existence of an indebtedness, payment of which it is designed to secure. There is no suggestion in either the bill of complainant or the instrument in question that any indebtedness, either already incurred or then created, existed on the part of the defendants to secure which this instrument was given. No reference is made to the payment of interest, a usual thing if the intention is to create and secure a debt, nor is there anything to indicate that the intention of the parties was not what from the face of the instrument it would appear to have been. Neither party may have desired · to make a mortgage. The makers of the instrument may have been unwilling to assume a personal liability to the other party with a resulting risk of having to make good the deficit if from death, decline in values, low prices at forced sale or other cause the cattle conveyed should not prove sufficient to satisfy the debt; and the other parties may have been unwilling to risk the delays and expense of a foreclosure suit. So far as appears this was the case. When a conditional sale is intended, the intention will be given effect. *McGriff v. Porter*, 5 Fla. 373; *Hollingsworth, Handcock*, 7 Fla. 338; *Franklin v. Ayer,* 22 Fla. 654.

The fact that the condition which shall defeat the conveyance is that the grantors shall "pay" money to the other

parties does not imply an existing indebtedness and an obligation to pay whether they so elect or not. A payment is not necessarily in discharge of a previous obligation, but may be the delivery of money as an equivalent or recompense for some present benefit, the procurement of which is optional with the payer. Thus, one "pays" cash for goods which he purchases, or in consideration of a release which he procures. So, here, the payment, optional with the grantor, when made is the recompense or equivalent which he pays for the resulting benefit obtained by the forfeiture of the conditional conveyance.

This question is disposed of by the decisions of this court above cited. In the two latter cases the condition in the instrument was that the grantor should "pay" money as in this case. In *Hollingsworth v. Handcock* the court held the instrument to be a conditional sale, saying "there seems to have been no previous negotiations between the parties, nor any loan or debt due, or mortgage spoken of to secure a previous debt." And in that case the condition was the payment of a certain sum of money and interest thereon, which contains an intimation of indebtedness not present in the instant case. In the case of *Franklin v. Ayer,* the court, while holding the instrument there involved to be shown by the evidence in the case to be a mortgage, says: "Viewing the transaction upon the papers alone, and in the absence of evidence alluded to, we think it might be doubtful whether the parties intended to make a mortgage or a conditional sale. The papers alone would clearly import a conditional sale if it were not that the paper called in the record a bond for title recites that there was an existing debt evidenced by a promissory note for the amount advanced by F. to A." In the case at bar, as we have seen, there is no evidence and no averment in the bill to vary the natural import of the language of the instrument.

Such an instrument may, of course, be executed under such circumstances and with such intention as to constitute it, under section 1981 of the Revised Statutes, a mortgage,

rather than a conditional sale. Where such circumstances do not appear from the bill, however, the point can not be raised by demurrer, but the facts must be set up by plea or answer.

The other grounds of demurrer have not been argued before us, nor have they been considered by the lower court from the standpoint from which it must now view them, and we, therefore, reserve any discussion of them.

The order of the court below sustaining the fourth ground of the demurrer to the bill is reversed and the cause remanded.

CARTER, P. J., and COCKRELL, J., concur.

TAYLOR, C. J., and SHACKLEFORD, J., dissent.

HOCKER, J., being disqualified, took no part in the consideration of this opinion.

TAYLOR, C. J., dissenting.—I can not agree to the conclusion reached in this case. In the opinion it is very properly said "an essential feature to a mortgage is the existence of an indebtedness, payment of which it is designed to secure." The opinion then proceeds to say that "there is no suggestion in either the bill of complaint or the instrument in question that any indebtedness either already incurred or then created existed on the part of the defendants to secure which this instrument was given." In the latter conclusion I am unable to agree. The instrument set out in the bill for its specific enforcement first acknowledges receipt from Smith & Company of the definite sum of $200, then by apt words bargains, sells and transfers to them certain definitely described cattle, then follows: "The condition of this sale is that if the said J. W. Hope or Grace M. Hope, his wife, shall pay or cause to be paid to the said W. J. Smith & Company or order the said sum of two hundred dollars ($200.00) on or before November 1st, A. D. 1900, this sale and transfer to be null and void; otherwise to be

and remain good and effectual in law, in which event we agree to deliver to said W. J. Smith & Co. at Fitzgerald, without charge, the fifty head of cattle herein described." In this condition we have the annulment of the entire instrument expressly made to depend upon the happening of what event? "If the said J. W. Hope or Grace M. Hope, his wife, shall *pay or cause to be paid* to the said W. J. Smith & Co. *or order* the *said* sum of two hundred dollars ($200.00) on or before November 1st, A. D. 1900." Bouvier defines the word "pay" as follows: "To discharge a debt, to deliver a creditor the value of a debt, either in money or in goods, to his acceptance, by which the debt is discharged;" and he defines the word *"payment"* to be: "The fulfillment of a promise, or the performance of an agreement. The discharge in money of a sum due. It implies the existence of a debt, of a party to whom it is owed, and of a satisfaction of the debt to that party." *Tuttle v. Armstead,* 53 Conn. 175, 22 Atl. Rep. 677; *Farmersville v. Greenville Nat. Bk.,* 84 Texas, 40, 19 S. W. Rep. 334; *Bloodworth v. Jacobs,* 2 La. Ann. 24. Webster defines the word *"pay"* to be: "To discharge, as a debt or obligation, by giving or doing that which is due; to make due return for; to deliver the amount or value of to the person to whom it is owing." So, when the parties to this instrument used the words *"pay* or cause to be *paid,"* a definitely specified sum of money it implied the *existence of a debt* for that sum owed by the party who undertook *to pay* to the pary to whom such *payment* was to be made. The condition in this instrument further fixes a definite date on which such *payment* should be made, and further contains a promise to pay the sum named *"to the order"* of the payees named, so that it can not be said that the instrument left it *optional* alone with the makers thereof whether they would pay the money or deliver the cattle. I take it that under this instrument W. J. Smith & Co., the payees named therein, could, at any time after the date fixed in the instrument for the *payment* of the money named, have required the makers

of that instrument to have paid the amount named therein to a third party by a draft or order for the amount, whether the makers were then in a frame of mind to deliver the cattle in specie or not.

In *McGriff v. Porter*, 5 Fla. 373, a mortgage of personalty is defined to be: "A mortgage of personalty is a conveyance of the absolute property and interest therein, defeasible on the performance of some condition subsequent, such as the payment of money, doing some act by the mortgagor, or the like." This definition describes the instrument under discussion fully and accurately, and under our statute making any instrument of writing a mortgage that is given for the purpose or with the intention of securing the *payment* of money, I think it is clear that the instrument involved in this suit is a mortgage, and nothing more. That it does not provide expressly for the payment of interest on the debt it secures, is no criterion by which to test the character of the instrument. It certainly bore interest at the legal rate from the date fixed therein for the payment of the amount agreed therein to be paid, and the interest on the sum loaned for the time anterior to that date may have been deducted by the creditor from the sum loaned in advance at the time of the loan. But, again, I do not think that this instrument can in any event be held to be a conditional sale, for the reason that it shows on its face that the *conditional sellers* have all along retained *possession* of the property sold. To constitute a *conditional sale,* an essential feature is the delivery of possession of the thing sold by the seller to the purchaser. In any aspect of the case, I think it is clear that the instrument here is a mortgage, and can, under our statute, be enforced only by foreclosure, and that the court below properly sustained the demurrer of the defendants below to the bill of the complainants on that ground, and that the decree appealed from should be affirmed.

SHACKLEFORD, J., concurs in the foregoing dissenting opinion.